Case number 09-0502, Continental Casualty Corporation v. Donald Bertucci, LTD, et al. Okay, I wonder if the lawyers on Continental v. Bertucci would step up and identify yourselves for the record. Good morning, Your Honor. Michael Padley for Donald Bertucci and Donald Bertucci, Ltd. Good morning. Good morning. Kelly Overman for Plano Papelli and Frost Papelli, Continental Casualty Company. Good morning. Counsel, in the interest of full disclosure, I should inform you that Mr. Connolly and I went to law school at the same time at the same school. You wouldn't know it because he's much younger than I am. May it please the Court, Counsel, I represent Donald Bertucci and Donald Bertucci, Ltd. both as appellant and as Frost Papelli. As appellant, we are asking this Court for two things. First, to reverse the judgment of the trial court granting summary judgment in favor of Continental and against Bertucci on count one of Continental's complaint. It was a summary judgment complaint on the policy in the court below. That count saw the declaration that there was no coverage because the complaint of Mrs. George Rodriguez in the underlying case did not seek damages as that term was defined in the policy issued to Bertucci. Secondly, as appellant, we ask this Court to reverse the judgment of the trial court granting summary judgment in favor of Continental and against Bertucci on count two of Bertucci's counterclaim. And that counterclaim, that count, saw the declaration that Bertucci was entitled to a defense of the Lourdes Rodriguez case under the policy pursuant to a separate and specific grant of defense coverage. Up to $10,000? No. $100,000? No. No, this is different. On the counterclaim on that count, Mrs. Gordon, what we sought was coverage under a specific and separate grant of coverage. I will address this in detail. In the policy, although albeit contained in an exclusive grant. Oh, I see. That argument. And then as cross appellee, which I will address in my response from counsel. I'm sorry. I jumped in. That's okay. Cross appellee, we ask this Court to affirm the judgment of the trial court finding in favor of Bertucci on count three of his counterclaim, which was the count which this Court has mentioned. Are we going to interpret legal services throughout the same? That's my first question. Does it mean the same for every part of this policy, or are we going to change it for the attorney disciplinary provision? No, I don't think you're going to change it for the attorney disciplinary provision. So what does legal services mean under the terms of the policy? How is it defined? The specific definition, which is contained in the policy, and by the way, it is also referred to in that section of the policy that Justice Gordon just mentioned. What is the legal service here? That's what we're asking. That was defaulted upon. Well, let me suggest what you're going to say about that. You're going to say the legal services was a failure to get leave of court to increase his fee. No, two things. What else? Keep in mind in the agreement. Is that a legal service for another person? Oh, I think so. It is. To get this fee is a service for her. You start looking, and here's why it's important. You start looking at the agreement, the legal services agreement, between Bertucci and Mrs. Lloyd-Woodley. You look at the policy and the complaint. That's what we look at. This is a duty to defend. We're not looking at his contract with her. We're looking at the insurance company. But in the underlying complaint, the underlying complaint refers to the fact that he had an agreement with her. Yes. That agreement allowed him to take a fee up to 40% if he would go in. So how does the failure to get permission to do that dis-serve the client? Let me put it in those terms. Does it dis-serve the client? It dis-serves the client, and it kind of goes back to something you were talking about in the other case. It dis-serves the client if, in fact, had Mr. Bertucci done what both the legal fee agreement and the statute 211.14 provides, if, in fact, he would not have been granted the additional fee. He then would have been confined to the fee in 1114. But he is without a fee anyway. That's what happens if he doesn't get leave of court. So he doesn't have to go through unnecessary choreography to establish the benefit that's established by his failure to get leave of court. No. I think my view is in the underlying case. And the Rodriguez case, by the way, is still pending. It's still going on in the circuit court in Cook County as we sit here. And I do not represent it. And he doesn't need leave of court or the denial of leave of court to forego the fee. He could do that on his own. He could forego the fee on his own. But the fact that he took that fee, the damage to Mrs. Rodriguez is you agreed, both in your legal services agreement and you had an obligation by statute, by Illinois statute, to do something before you took that fee. You didn't do that something, and, therefore, you got the enhanced fee. The unarticulated verdict. So you're saying, then, that you want to recover because of his malpractice in taking the fee. Yes. So he wants to be indemnified for the malpractice, for the loss that his client, that he inflicted on his client. No. You have a very ironic position, Mr. Connelly. We're all aware of that. And we're all aware of the fact that you're going to try to do your best now. No. But what I'm saying is the unarticulated premise of Mrs. Lourdes Rodriguez's case, it's pending right now. Unarticulated premise? I think it's an unarticulated premise. Yes. I think unarticulated is clearly a good thing. He has to show that had you done the right thing, you would not have been entitled to the fee. Does she anywhere say that Mr. Bertucci did anything wrong in litigating that medical malpractice suit? No, she does not. She never says he was negligent. How could she? She got her $2.25 million. She never said the settlement wasn't enough. She never said he didn't do discovery. She never said anything bad about his litigation of the medical malpractice case. She did not. And isn't there an abundance of case law that suggests that we're looking at what the nature of her suit was? No, because I think what's important is this issue was presented to this court in the Kaplan case. And I think the Justice … In the Kaplan case, the Kaplan case was a bankruptcy case. The lawyer didn't discharge his own fees in the bankruptcy case. Correct. His core representation was violated. He did not do what he was supposed to do. He was supposed to get even those fees discharged. He did not do that. And my analogy is he didn't do what he was supposed to do and got too big a fee. Here, he didn't do what he was supposed to do, and maybe the court would not have granted him the advantage. Incidentally, was there a PLA filed in the Kaplan case? Do you know? There was a – as I recall, yes, there was. The Supreme Court turned that case down. Oh, not the Supreme Court. No, there was a rehearing bid out. There was not a PLA. Because that case, in my view, does not necessarily ground the law to its dimensions either. However, for whatever it's worth, it's distinguishable from this case because of the fact that what he didn't do in court in the Kaplan case dis-served the client, while what he didn't do in court in this case served the client. I'm making the analogy that I made. I'm not going to beat it up, Judge. But I do want to go to our next point, and that is the denial – or that is the grant of summary judgment on count two of Pertucci's counterclaim. Page 10 of our brief contains the language that to me is important. And it is an exclusion. And the general argument against it was you can't create coverage by exclusion. That's a pretty basic general principle that we've been following. Right, and it is. More than 7,500 years, isn't it? It's a pretty straightforward, though, principle, and I don't know how – Okay, here's – because this exclusion is very different. The policy – any policy generally, liability policy such as this, has a general duty of defense. This particular duty of defense is different than the other duty of defense in the policy. It is very different. This exclusion starts with the fact that the policy doesn't apply. That's the introductory language. Policy doesn't apply to acts, dishonest acts, malicious acts, omissions. But don't we look at the whole policy? You sure do. Claims, damages, legal services. We have to interpret all those terms the same throughout the policy. We cannot change those terms even for the exclusion, Mr. Connolly, can we? No, you can't. But the policy doesn't apply. But then it goes on to say something. We're going to do something different here. Even though the policy doesn't apply to those things, even though we're not going to let you have coverage for those things. And this – it says, the company shall provide the insured with a defense of such claim unless and until the dishonest, fraudulent, criminal, malicious act has been determined, trial, verdict, et cetera. Keep in mind, why is that different? We're not going to represent you at an appeal. We're not going to give you a bond. We're not going to do any other things that we have to do under the general defense obligation of the policy. This is a separate and distinct undertaking for these groups. It's an exclusion first and foremost. It is within. And an exclusion cannot create coverage that the policy doesn't otherwise provide. But the policy has to be read in the four corners. Of course. And the language has to be read as people would normally interpret it. Those are things – those cases are cited within. But isn't that tied to damages, legal services, and claims? Is it not? I do not believe – because it starts with the fact that the policy doesn't apply. And then it gives a separate and distinct defense obligation. That's why I think it is different. That's why I think it is a separate grant of coverage. All right. So you're arguing that it's not an exclusion. I'm arguing that it is within exclusions but a grant of coverage. Let's digress for just one moment. If there was, in fact, liability by the carrier to indemnify the attorney for his overreaching portion of the fees, which he then loses by virtue of his having overreached, first of all, is there a public policy problem with that? Should we be parties as a court to enforce that kind of provision? Or does it smack of enforcement of coverage for punitive damages? Oh, no. I don't think it does at all. Because the court has – starts with the comment of overreaching. Because every attorney at this point could bypass the limitations on his fee by overreaching. And then when his hand is caught in the till, so to speak, getting that amount back from his carrier. He could if it was found that he didn't deserve it in the first instance. In other words, if your contract says you can get up to 40 percent if you do X, Y, or Z, and you don't do X, Y, or Z, and you don't comply with 1114, then have you done something else? So should his right to recover the indemnity, according to what you're saying, necessitate a trial within the trial, so to speak, to determine his entitlement, whether he would have gotten it had he asked for it? I personally believe that, yes, that's an element that Mrs. Rodriguez should have to prove in the case that's pending over there. Is the fact that the policy – Not Mr. Rodriguez. Do you mean Mr. Pertucci? No, no. Mrs. Rodriguez is suing Mr. Pertucci for too big a fee. That case is the one we're looking at for defense. Is the exclusion, the broad exclusion in the policy that does not – that the policy doesn't apply to attorney fees, legal fees, is the exclusion – does that exclusion – does the exclusion now that you're referring to as coverage trump that exclusion for fees? Is that what you're saying? No, because this doesn't give fees. This doesn't apply to fees at all. This is a very limited grant of coverage. No. You're missing what I'm saying. In other words – You're saying that this exclusion grants a separate form of coverage. Right. Now, does this separate form of coverage trump the exclusion in this policy for legal fees? And show me a case that says that there's such a principle. No, it does not trump the exclusion for legal fees, nor does it – Because you say these aren't legal fees. No, they're not legal fees. All right. Now, if it's a dispute about legal fees – let's just throw this one to you. If this is truly a dispute about fees – and I'm not saying you have to concede that. I'm just saying for purposes of my question, if this is a dispute about fees, does the exclusion that you say creates coverage trump legal fees? No, and I don't believe it has to because there's two pieces to that. Its damages are rising out of the performance of legal services. And what you're saying, though, is that there's no question this is legal services. All right. So if you agree, if we say this is not about legal services, it's about fees, then do you lose? If the court applies that blanket over the whole thing, yes. All right. But isn't that generally what we have to do when we look at a policy? We can't throw out legal fees or legal services or damages or claims for one provision of the policy. No, but I do think you have to read the whole policy and read it as people – what the expectation of the policyholders, as people would read it, and what the language says. Okay. So you say it's completely – I know you disagree with the judge's ruling on the summary judgment as far as the count one, but you believe that these are – they can be reconciled. Even though her one ruling is wrong, you – Right, well, particularly in light of her third ruling. Yes, yes. Okay. All right. So I will await counsel to argue that third point. Thank you, Mr. Connolly. Counsel? I didn't catch your name. You're Ms. Ripley? No, I'm Kelly Overman. Kelly Overman. Yes. Thank you, Ms. Overman. Yes, thank you. May it please the Court. Counsel? What we've seen here today, that this appeal centers on fairly straightforward issues of contract interpretations relating both to the lawsuit and to the disciplinary complaint that Ms. Rodriguez filed. And importantly, as Justice McBride pointed out, Ms. Rodriguez has made no allegation whatsoever in either her lawsuit or the ARDC proceeding that Mr. Bertucci was negligent in any way in handling the underlying case. And the only relief that she seeks is a return of the fee that she claims that he kept, which was too large, which was not what he was entitled to. This is not in dispute. Mr. Bertucci has conceded that the only allegation that Ms. Rodriguez has made that even potentially falls into coverage. Let me turn something around. Sure. If I may. Supposing Mr. Bertucci would have gone to the trial judge and gotten leave to enhance his fee, and that the carrier, or rather the client, would have then challenged it and fought the battle and won. Could Mr. Bertucci at that time, at that point, turn to the carrier and say reimbursement? I think that's an excellent question. I think the answer is still no. I think at that point you still have a situation where the demand relates entirely to fees, and the policy excludes from the definition of damages, which is included in the policy's insuring agreement, which of course is the basic grant of coverage for the policy. The damages do not include any relief sought that includes fees or any injuries that are a consequence of the return of fees. So even then, the situation would not have involved a covered claim. And then returning back to the damages issues, which is the source of the appeal. Because this is a fee dispute, damages must be found in this case. Damages are a key part of the insuring agreement, again, which is the basic grant of coverage. The insuring agreement is the part of the policy, it's the very beginning of the policy, which outlines what types of things are covered by the policy. So both damages and legal services, which you questioned Mr. Connolly about, must be established for the policy to cover the claim. And in this case, Mr. Bertucci claims that the reason that this case is covered is because his client failed to go to the court to seek out the enhanced fee under the relevant statute. That statute, which he claims, which was at issue here, is entitled contingent fees for attorneys in medical malpractice actions. But it doesn't have anything to do with how medical malpractice should be handled. Would that also include, for example, if there was a legal malpractice action for, let's say, losing the underlying tort action, the personal injury action, by negligently losing that case. And there was, as a consequence, that issue goes to trial and wins. Malpractice is found. Malpractice is found. Presumably, it also constitutes a breach of the contract for services and would probably exculpate, I'm not sure of that, would exculpate the client's duty to remunerate, to pay fees to her attorney. At that point, could the attorney seek indemnification just as he can seek indemnification for the loss, for his liability to the client, should he also be able to include his loss of fees? I think that is an entirely different case from what we're talking about. Well, is it different? And if so, how? If there is a situation in which Bertucci or any other lawyer actually committed malpractice in the underlying case, committed some negligence, then we would have potentially a legal services argument here. Whereas, in this case, there are no legal services. So fees are not universally excluded no matter the context in which they arise. I disagree. Well, I thought that's what you just said. Well, I think that there are two elements here. It's a little confusing because the case doesn't fall into coverage because it neither alleges damages nor does it allege legal services. So in a situation like the one you proposed, I think that there is a possibility in that case that legal services would have been alleged. But still, if the relief sought simply is legal fees or the return of legal fees or any injuries that are a consequence of the return of legal fees, that relief would not be covered under the policy. I think this question is a lot closer. I'm wondering when you go back and review this argument in your computer whether you'll stand by your answer. I think the question is a lot closer. I think the question is a lot closer when you consider Kaplan. We're not asking the court to overturn Kaplan in this situation. We just believe this case, as you mentioned before, is distinguishable from Kaplan. Based on the clear terms of the policy under the scenario that you suggested, if the only relief that is sought is the return of fees, then under the clear terms of the policy it appears to be that there would be no coverage. The Kaplan case, which, again, we're not asking the court to overrule in this case, does sort of stand for the proposition that when there is negligence in the underlying case, alleged negligence in the underlying case, in that case, as you mentioned, it was a bankruptcy case, the alleged negligence was the failure to discharge pre-petition legal fees in the bankruptcy case. The court found that was a different scenario. And in that scenario, the alleged relief was not legal fees or injuries that were a consequence. He's still getting serendipity, isn't he, in the Kaplan case, because he's not entitled to a fee and he's not getting the fee from his client, but he's getting the amount of the fee to which he's not entitled by virtue of the bankruptcy discharge from his carrier. So he's getting the windfall, isn't he? In the Kaplan case, right? Yes. And if he gets the windfall there, why shouldn't he get it here? As I mentioned before, this case is easily distinguishable from Kaplan as the court has. Let's focus for just a moment, for my sake, on this ARDC complaint. Sure. And that portion of it and whether he was entitled to a defense for the ARDC case. Couldn't you argue that but for his legal services to the client? Forget about fees for a moment. But for those legal services that he provided, there would have never been an ARDC complaint. I think... And clearly his right to any kind of a fee, any kind of a fee, arose out of providing those legal services. So that if somebody charges him with a malicious act or omission in conjunction with the fees charged for those legal services, they should have at least been entitled to a defense under your exclusion policy. For that question, I think it's important to look at the definition of legal services. And legal services... Well, I'm talking about whether or not you can look upon the fees as arising out of legal services. And use that as a cutoff. And the concept of the ARDC... But in addition to charging a fee, what if he was behaving like a rascal in the course of charging a fee? Well, the ARDC proceeding is somewhat different than the handling of the legal malpractice. Yeah, well, that's why the judge ruled differently on the ARDC proceeding than she did on the original complaint, right? Yes, that is correct because... She said there's no coverage under the policy for the original complaint. Correct. But the ARDC, she read that the company shall provide the insured with a defense of such claim unless or until a dishonest, fraudulent, criminal, or malicious act or omission has been determined. I think the difference here is that the ARDC complaint, coverage for that portion is determined under the supplemental payments portion of the policy. And that... She didn't rely on the exclusion. She relied on that supplemental payments, didn't she? She was looking at supplemental payments portion of the policy. But the definition of legal services is included in both of those. Correct. Right. And so in that case, so in the underlying action, the court found that there were no damages. And for that reason, there was no coverage in the underlying case. Supplemental payments portion of the policy, which is a separate portion of the policy, does not require as a prerequisite to coverage that damages be established. But legal services still must be established for supplemental payments coverage. And we believe that Judge Arnold incorrectly found that legal services were established there. Because legal services do not encompass all actions by an attorney. That's not what the malpractice policy is entitled to cover. Legal services are services for others by an attorney. And services for an attorney have been found by courts from all over the country not to include besetting and billing issues like this one. And they also are held to be, they're held only for legal services for others. And in this case, as you discussed with Mr. Connolly, there was no services actually provided to Ms. Rodriguez in the actual allegation that's complained about here, in both the complaint and in the fee dispute action. Other than pointing out that Mr. Connolly doesn't cite any authority for this notion that an exclusion creates coverage, how else would you attack that exclusion in this case? Well, I think it's important to look at the policy as a whole. And unfortunately, what it appears that Mr. Connolly is doing is trying to string together different portions of the policy with different rules of construction to sort of reach the end he'd like. Well, he's trying to put a better light on it. He's seasoned an ambiguity that should be read in favor of his client, the insurer. I think what he's, he is attempting to find an ambiguity, unfortunately, here where none exists. Because it is clear from his personal injury defined in the policy that's used in that exclusion term. It's an exception to the exclusion. Well, if you look to the definitions, and this is a point that you'd ask Mr. Connolly, if you look to the definitions for a portion of the policy, right under the word definitions, it says we're never used in this policy. So any word that's a defined term in the policy applies to every aspect of the policy. With regard to your specific question, personal injury is a defined term in the policy. And how is it defined? Personal injury is defined as an injury resulting from an act or omission arising out of false arrest, detention or imprisonment, wrongful entry or eviction, or other invasion of the right of private occupancy, libel, slander, or other disparaging or defamatory materials, a writing or saying in violation of an individual's right to privacy, malicious prosecution, or abusive process. So for purposes of count two of Mr. Bertucci's counterclaim, because there are no legal services or damages alleged in this case, exclusions are not even reached. And moreover, Continental does not even invoke exclusion A in this case. So even if we were to reach the exclusions, which we wouldn't because damages and legal services are not reached, exclusion A is not even reached. And although Mr. Bertucci himself doesn't cite any case from any court in the country to support his position that the carve-out to exclusion A can be a stand-alone grant of coverage, apart and aside from the insuring agreement of the policy, it doesn't even adequately address the Walker decision, in which the insured attempts to sort of argue the same position. In that case, the claim didn't fall within the insuring agreement because it was not a claim made and reported during the policy period, which is another prerequisite to coverage in the insuring agreement. Because of that, there was no coverage. Yet Mr. Walker said that he was an innocent insured, that he, because there was allegations of dishonest conduct that had not yet been proven, that he was entitled to coverage. So basically you're saying, with respect to the ARDC issue, that even if he was charged by the ARDC with failing to follow appropriate bar standards in his fees, in his requesting a fee, it can never be read to arise out of the original legal services? Yes, that is correct. Even though there would have been no fees requested had there been no legal services? Right, because not all legal services. So arising out of has to be cut off right at the point where you get a fee dispute? Well, there are other actions by an attorney which would not constitute legal services as defined by the policy as well. But any kind of mischief that arises out of the fees themselves wouldn't be covered by the legal, by this policy? Correct. Any injury that's a consequence of the fees would not be covered under- It says that, though. That's part of the definition of legal fees, or any injury arising out of- Absolutely. It's very broad, because we, as attorneys, we need insurance. But fee disputes like this one, and Mr. Bertucci makes much ado in his brief to try to not call this a fee dispute, but it actually is. And the policy in two places, by defining damages and by defining legal services the way it does, works to unambiguously bar coverage for fee disputes like this one. And with no further questions, Your Honor? A final word, Mr. Connolly, briefly. Confining myself to that part that I said I would, the back end here. As to the supplementary payments, I think the important thing to look at in the supplementary payments provision is right off the bat, the company, Continental, has taken that damages issue away. It's gone. It says, although not damages. So we're right in, right there. But it brings back this legal services notion. It brings back the legal services, but this says arising out of an act or omission. To read that in the way that counsel wants it read means that unless it is for the immediate financial benefit of the client, I think that arising out of it. Well, that's the same language used by the coverage provisions as well. Act arising out of.  I agree with that. It's the same language. But the legal services, it's an undertaking. You cannot divorce a settlement sheet. You cannot divorce the fee agreement from the undertaking, the representation of the client. How I distribute the fees in the settlement, how I do that is part of my representation of a client. I can't divorce that and say I'm not doing that. I can commit malpractice in the course of that. So you can't say that that's not arising out. Well, you can narrow it down to acts arising out of the service. Rather than the fee charge. Meaning some defect or some injury created by the service. You could do that. But I think that takes arising out of and crunches it down to a point where it shouldn't be. Unless the provision is in context. It's clear that it doesn't want to get involved in indemnifying. No, because the provision starts with that phrase, although not damages. And damages is where that fee concept comes in. So consequently, having taken that out of the mix at the front end and then going to arising out of, that is a coverage scope. That's it. Thank you. Counsel, the case was well argued and well briefed. Thank you very much. We'll be taking a